STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1312

JUANITA EARLY CLINKSCALES, EXECUTRIX,
SUCCESSION OF MARIAH E. WALKER

VERSUS

THE COLUMNS REHABILITATION AND RETIREMENT CENTER

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CATAHOULA, NO. 25,033 "B"
HONORABLE LEO BOOTHE, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters and Marc T. Amy, Judges.

AFFIRMED.

James Roy Chrishon
1756 Elliott Street
Alexandria, LA   71301
(318) 448-6353
COUNSEL FOR PLAINTIFF/APPELLEE:
    Juanita Early Clinkscales

C. Blair Bright
Christovich & Kearney, LLP
601 Poydras Street, Suite 2300
New Orleans, LA   70130-6078
(504) 561-5700
COUNSEL FOR DEFENDANT/APPELLANT:
    The Columns Rehabilitation
    and Retirement Center

AMY, Judge.

Upon the death of a resident, the defendant nursing home refunded the unused money paid in advance by the resident to the responsible party listed on an admission agreement. The executrix of the deceased resident's succession brought a conversion suit against the defendant, claiming that the refund should have been paid to the estate. The defendant contended that it did not convert the funds, rather it acted pursuant to the agreement. The trial court ruled in favor of the executrix, finding that the defendant failed to introduce evidence of the responsible party's curatorship and that the contract could not be relied upon because it did not contain the responsible party's signature. Further, the trial court found that the laws on succession could not be superseded by a contract. The defendant appeals, seeking to reverse the trial court's determinations and urging that the action has prescribed. For the following reasons, we affirm.

**Factual and Procedural Background**

Mariah Early Walker became a resident of the Columns Rehabilitation and Retirement Center, the defendant, in September 2003. She entered into an Admission Agreement, naming her niece, Connie Smith, as the responsible party. The agreement bears only the signatures of Ms. Walker and a representative of the defendant. This agreement stated that "[a]ll refunds due to the Resident . . . . shall be made payable to the Resident, his/her assigned representative or a governmental or legal agency as directed by law." The defendant also had a Resident Refund Procedure which provided: "[i]n the case of the discharge or death of a resident, refund or unused charges paid in advance by the resident of family will be made promptly to the resident or responsible party." After Ms. Walker's death in August 2006, the defendant paid the balance on the account, $2,395.20, to Ms. Smith. The plaintiff,

Juanita Early Clinkscales, was confirmed as the executrix of Ms. Walker's succession on December 19, 2006. On March 6, 2008, the plaintiff filed suit against the defendant, alleging that the account balance was tortiously converted insofar as the defendant made Ms. Smith the recipient of the refund, rather than Ms. Walker's succession.

After a bench trial, the trial court ruled in favor of the plaintiff, finding that the defendant failed to produce evidence of Ms. Smith being Ms. Walker's curator and that even if such evidence was present in the record, the Admission Agreement was invalid as to Ms. Smith because she did not sign it. Further, it found the agreement was trumped by the succession laws of Louisiana, one of which provides that "[p]rior to the qualification of a succession representative, only a universal successor may represent the decedent with respect to the heritable rights and obligations of the decedent." La.Civ.Code art. 935.

The defendant appeals, contending that the plaintiff's claim for conversion of property prescribed before she brought suit. Additionally, it assigns as error:

> (1) the finding [that] the Admission Agreement contract between Mariah Early Walker and the Columns Rehabilitation and Retirement Center was invalid because it was not signed by Connie Smith, the individual named by Ms. Walker in the contract as her "responsible party."

> (2) the finding [that] the Admission Agreement contract seeks to supersede, and acts in derogation of, the express provisions of the testate laws of the State of Louisiana.

**Discussion**

*Standard of Review*

The appellate standard of review in regard to contractual interpretations is as follows:

2

Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. However, when appellate review is not premised upon any factual findings made at the trial level, but is, instead, based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect. (citations omitted).

*Evangeline Parish Sch. [Bd.] v. Energy Contr.*, 617 So.2d 1259, 1265 (La.App. 3 Cir.), *writ denied*, 624 So.2d 1228 (La.1993) (quoting *Borden, Inc. v. Gulf States Utilities Co.*, 543 So.2d 924, 928 (La.App. 1 Cir.), *writ denied*, 545 So.2d 1041 (La.1989)).

*Prescription*

The defendant asserts in its brief that the plaintiff's claim had prescribed before suit was filed in the trial court. The fourth circuit in *Alomang v. Freeport-McMoran, Inc.*, 97-1349, p. 1 (La.App. 4 Cir. 3/4/98), 718 So.2d 971, 973, *writ denied*, 98-1352 (La. 7/2/98), 724 So.2d 734, stated:

Defendants suggest in brief that plaintiff's tort claims have prescribed. No exception of prescription was filed below. An exception of prescription may be filed for the first time in this Court. LSA-C.C.P. art. 2163.[1] However, the defendants have not done so. They have only mentioned the issue in their brief. An exception of prescription presented only in argument either orally or by way of memorandum or brief is not sufficient. *Rapp v. City of New Orleans*, 95-CA-1638 p. 50 (La.App. 4 Cir. 9/18/96); 681 So.2d 433, 457, *writ denied*, 96-2925 (La.1/24/97), 686 So.2d 868.

---

[1] Louisiana Code of Civil Procedure Article 2163 provides:

The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.

If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the case be remanded to the trial court for trial of the exception.

Because the defendant did not file an exception of prescription in the trial court or in the appellate court before the case was submitted for a decision and only raised the issue in its brief, we do not consider the argument.

*The Validity of the Contract*

In its second assignment of error, the defendant contends that the trial court erred in finding that the contract was invalid because Connie Smith did not sign it. In its discussion of this assignment of error, the defendant questions the trial court's reliance on the absence of evidence regarding Ms. Walker's interdiction: "[t]hat Connie Smith became a co-curator of Walker's affairs some three years after Walker signed the Admission Agreement contract has no bearing on the validity of the contract and its governance of the issue of refunds upon discharge or death of Ms. Walker."

As the contract is a distinct issue from Ms. Smith's legal relation to Ms. Walker while she was alive, we discuss them separately. The reason for the distinction lies in the two provisions that are presented on behalf of the defendant. The first pertinent provision is found in paragraph 8 of the Admission Agreement:

8.    Refund Policy

Refunds payable shall be confirmed by audit by the Facility's central accounting service. All refunds due to the Resident:

a)    Shall be made regardless of the reason for the Resident leaving.
b)    Shall be remitted with a full accounting when requested.
c)    Shall be made payable to the Resident, his/her assigned representative or a governmental or legal agency as directed by law.

The second provision at issue is located in the defendant's Resident Refund Procedure, which provides, "[i]n the case of the discharge or death of a resident, refund or unused charges paid in advance by the resident or family will be made

4

promptly to the resident or responsible party." On the one hand, as expressly provided for in the contract, the money is payable to Ms. Walker's assigned representative or an agent as provided by law. On the other hand, the balance is owed to Ms. Walker's responsible party.

The Admission Agreement's language suggests that the money would go to Ms. Walker's legal representative. This provision is seemingly what prompted the trial court to discuss the absence of the Judgment of Interdiction in the record. Without the legal document confirming the identity of Ms. Walker's curator, the court cannot find that Ms. Smith qualified as such. Thus, she did not fulfill the requirements laid out in Paragraph 8 of the Admission Agreement and is not entitled to the refund under that provision.

Insofar as the defendant contends that Ms. Smith is the rightful owner of the account balance pursuant to her status as a responsible party as provided for in the Resident Refund Procedure, we refer to the Admission Agreement to determine who is a responsible party. The Admission Agreement provides, '[a]ll parties identified and signing below as Co-Responsible Parties shall also be deemed to be a Party to this agreement and hereby agree to all its terms and provisions. (The Responsible Party and Co-Responsible Parties are hereinafter singularly and collectively referred to as 'Responsible Party.'" As held by the trial court and by the terms of the Admission Agreement, Ms. Smith would have needed to affix her signature to the contract to qualify as a Responsible Party.

We find further support for this contention in the section of the contract entitled "Miscellaneous Provisions," which provides:

> This Agreement constitutes the entire Agreement among the Parties pertaining to the subject matter contained in it and supersedes all prior

5

> agreements, representations and all understandings of the Parties. No supplement, modification or amendment of this Agreement shall be binding unless expressed as such and executed in writing by all Parties hereto.

In light of the contract's language providing that a signature is required in order for an individual to be deemed a responsible party and the above language mandating that the contract's terms govern in the absence of a written alteration, the defendant's argument that it distributed the account balance to Ms. Smith pursuant to the contract fails. Further, in order for the defendant to be able to enforce an obligation assumed by Ms. Smith, a third party, the contract must be in writing. *See* La.Civ.Code art. 1821.[2]

The defendant then asserts that "[t]he Admission Agreement, insofar as it provides for refunds of balances on the account of Ms. Walker upon the uncertain event of her discharge or death, is a perfectly valid aleatory contract with a provision for the benefit of a third person, Ms. Connie Smith." In support of its argument, it set forth the language of La.Civ.Code art. 1978, which states: "[a] contracting party may stipulate a benefit for a third person called a third party beneficiary. Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement." The classification of the Admission Agreement as a stipulation pour autrui fails in two respects. First, the supreme court in *Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary*, 05-2364, p. 15 (La. 10/15/06), 939 So.2d 1206, concluded that while there is no statutory requirement that a stipulation pour autrui be in writing, there may be contractual provisions between the parties that state otherwise. It held:

_____

[2] Louisiana Civil Code Article 1821 provides, in pertinent part: "[a]n obligor and a third person may agree to an assumption by the latter of an obligation of the former. To be enforceable by the obligee against the third person, the agreement must be made in writing."

Although the appellate court correctly found it unnecessary for a stipulation pour autrui to be in writing, these parties contracted that their entire agreement must be in writing. The contract provides: "This Agreement contains the entire understanding of the parties and shall be modified only by an instrument in writing signed on behalf of each party hereto." Thus, these parties contractually limited themselves to a written contract.

*Id.* at 1215. As discussed above, the contract states that "[n]o supplement, modification or amendment of this Agreement shall be binding unless expressed as such and executed in writing by all Parties hereto." Accordingly, without a written provision naming Ms. Smith as a third party beneficiary, she cannot qualify as such.

Secondly, La.Civ.Code 1978 contemplates a situation where a third party is given the benefit of an obligation agreed to by others. The supreme court in *Joseph*, 939 So.2d at 1212, offered guidance in determining the existence of a stipulation pour autrui:

Our study of the jurisprudence has revealed three criteria for determining whether contracting parties have provided a benefit for a third party: 1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee. In applying these criteria, we ultimately rely on the words of Article 1978 that the contract must "stipulate a benefit for a third person."

While satisfaction of the first criterion is arguably problematic, the real problem lies in the fulfillment of the third prong. The purpose of the Admission Agreement was to set forth the rights and duties of both the resident and the nursing home. The responsible party, who is "deemed to be a Party to [the] Agreement" by virtue of the Admission Agreement's own language, is liable for the obligations outlined in the contract.[3] The fact that the responsible party might also receive the account balance

---

[3] For purposes of this argument only, we proceed as though Ms. Smith signed the agreement and accepted her position as a responsible party. For all other purposes, we acknowledge that Ms. Smith did not qualify as a responsible party.

upon the resident's discharge or death was merely an incidental benefit. Accordingly, Ms. Smith does not meet the statutory and jurisprudential definition of a third party beneficiary.

*Testamentary Laws*

The defendant's final assignment of error concerns the trial court's ruling regarding the governing authority of the testamentary laws of Louisiana. It argues that the "Admission Agreement does not act in derogation of the provisions of the testamentary laws of the state." Because we find the Admission Agreement to be invalid as it relates to the distribution of the refund money, discussion of its relation to the rules on succession is moot.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed in favor of Juanita Early Clinkscales, executrix of Mariah E. Walker's succession. All costs of this proceeding are assessed against the defendant, The Columns Rehabilitation and Retirement Center.

**AFFIRMED.**